**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

RANDALL S. MILLER & ASSOCIATES,
P.C., and RANDALL S. MILLER,

       Plaintiffs,

                                       Case No. 14-14447

v.                                     Hon. Gerald E. Rosen

PITNEY BOWES INC. and
PITNEY BOWES GLOBAL
FINANCIAL SERVICES,

       Defendants.

_____/

**OPINION AND ORDER GRANTING**
**DEFENDANTS' MOTION TO DISMISS COUNTS II**
**AND III OF PLAINTIFFS' FIRST AMENDED COMPLAINT**

At a session of said Court, held in
the U.S. Courthouse, Detroit, Michigan
on        March 30, 2016       

PRESENT:    Honorable Gerald E. Rosen
                    United States District Judge

## I. INTRODUCTION

In their first amended complaint, Plaintiffs Randall S. Miller & Associates,

P.C. and Randall S. Miller have asserted state-law claims of breach of contract,

fraudulent misrepresentation, and innocent misrepresentation against Defendants

Pitney Bowes Inc. and Pitney Bowes Global Financial Services, based on

allegations that the software systems, associated hardware, and services provided by Defendants to automate the mailing functions of the Plaintiff law firm have failed to satisfy the terms of the parties' contract or to conform with Defendants' representations about how these products and services would perform. The Court's subject matter jurisdiction over these claims rests upon the diverse citizenship of the parties. *See* 28 U.S.C. § 1332(a).

In addition to answering the complaint and filing a breach-of-contract counterclaim against Plaintiffs, Defendants have filed a motion to dismiss the fraudulent and innocent misrepresentation claims asserted in counts II and III of Plaintiffs' first amended complaint. In support of this motion, Defendants argue (i) that Plaintiffs' misrepresentation claims are insufficiently distinct from their breach-of-contract claim to allow Plaintiffs to go forward with their tort claims under Michigan law, and (ii) that, in any event, Plaintiffs have failed to plead fraud with the particularity demanded under Fed. R. Civ. P. 9(b). In response, Plaintiffs contend (i) that Michigan law, correctly construed, allows them to pursue their misrepresentation claims so long as they have properly alleged the elements of these claims, and without regard for any purported overlap between some of these elements and the elements of their breach-of-contract claim, and (ii) that Defendants' appeal to the economic loss doctrine does not bar their claim of

fraud in the inducement or the fraud claims asserted by the individual Plaintiff, Randall S. Miller.[1]  Following this response, Defendants filed a reply brief in further support of their motion.

Having reviewed the parties' written submissions in support of and opposition to Defendants' motion, as well as the remainder of the record, the Court finds that the pertinent facts, allegations, and legal issues are sufficiently presented in these materials, and that oral argument would not assist in the resolution of Defendants' motion.  Accordingly, the Court will decide this motion "on the briefs."  *See* Local Rule 7.1(f)(2), U.S. District Court, Eastern District of Michigan.  This opinion and order sets forth the Court's rulings on this motion.

## II.  FACTUAL BACKGROUND

The following account of the facts giving rise to this suit is derived solely from the allegations of Plaintiffs' first amended complaint, which are accepted as true for present purposes.  Plaintiff Randall S. Miller & Associates, P.C. is a "law firm that represents banking and lending institutions in connection with various foreclosure related services."  (First Amended Complaint at ¶ 8.)  Plaintiff Randall S. Miller is the sole shareholder of the Plaintiff law firm.  Defendant Pitney Bowes

_____

[1]Plaintiffs' response is silent as to Defendants' Rule 9(b) challenge to their claims of fraudulent and innocent misrepresentation.

3

Inc. ("Pitney Bowes") is a provider of technology services, including the automation of mail processes and associated training services, and Defendant Pitney Bowes Global Financial Services ("PBGFS") is an affiliated company that leases the equipment necessary to implement Pitney Bowes' technology services.

In January of 2011, the Plaintiff law firm "contracted with PBGFS for the lease of mail equipment and to assist [the law firm] in automating various mail processes." (First Amended Complaint at ¶ 9.) The law firm "remitted $28,127.00 as a down payment" for this leasing arrangement, and individual Plaintiff Randall S. Miller "personally guaranteed" the lease. (*Id.* at ¶¶ 10-11.) At around the same time, the law firm "contracted with Pitney Bowes to[,] among other things, install a PlanetPress system for creating mortgage notices," and to provide training to the law firm employees who would use this system. (*Id.* at ¶ 12.) This PlanetPress system "consisted of various software and hardware packages to ensure the leased equipment performed the functions necessary to assist" the Plaintiff law firm. (*Id.* at ¶ 13.)

Although Defendants "represented that the leased equipment would fully automate [the Plaintiff law firm's] mailing functions," this equipment "failed to provide the services Defendants represented it was capable of providing." (*Id.* at ¶¶ 16-17.) The law firm "contacted Defendants on numerous occasions from

4

2011-2014 in an attempt to provide Defendants with an opportunity to remedy the situation," and also "continued paying for the leased equipment." (*Id.* at ¶¶ 18-19.) Despite these efforts, and "[d]espite numerous service calls and service appointments, Defendants failed to remedy the situation," and "the leased equipment never properly performed the automated mail services" promised by Defendants. (*Id.* at ¶ 20.) Accordingly, the Plaintiff law firm ceased making payments to Defendants in 2014, and "advised Defendants to pick up the equipment." (*Id.* at ¶ 21.)

Plaintiffs commenced this suit against Defendants in late 2014, and subsequently filed their first amended complaint on January 23, 2015. In this three-count first amended complaint, Plaintiffs have asserted state-law claims of breach of contract, fraudulent misrepresentation, and innocent misrepresentation. Through the present motion, Defendants seek the dismissal of the latter two tort claims, contending that they are legally insufficient in one or more respects.

### III. ANALYSIS

**A.    The Standards Governing Defendants' Motion**

Defendants have brought the present motion under Fed. R. Civ. P. 12(b)(6), maintaining that Plaintiffs have "fail[ed] to state a claim upon which relief can be granted" as to the misrepresentation claims asserted in counts II and III of their

first amended complaint.  When considering a motion brought under Rule 12(b)(6), the Court must construe the complaint in a light most favorable to the plaintiff and accept all well-pled factual allegations as true.  *League of United Latin American Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007).  Yet, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009).

Moreover, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964-65 (2007) (internal quotation marks, alteration, and citations omitted). Rather, to withstand a motion to dismiss, the complaint's factual allegations, accepted as true, "must be enough to raise a right to relief above the speculative level," and to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 555, 570, 127 S. Ct. at 1965, 1974.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S.

6

at 678, 129 S. Ct. at 1949.

**B.      Plaintiffs Have Failed to Allege the Violation of a Duty Owed
         Separately from the Obligations Incurred by Defendants Under the
         Parties' Contract, as Necessary to Pursue Their Tort Claims of False
         and Innocent Misrepresentation.**

As the first of their two challenges to the claims of fraudulent and innocent

misrepresentation asserted in counts II and III of Plaintiffs' first amended

complaint, Defendants appeal to a principle of Michigan law that is referred to, at

least in some contexts, as the "economic loss" doctrine.[2]  As this Court has

previously explained, this doctrine is a more specific application of the "general

principle that a mere failure to perform a contractual obligation cannot support an

action in tort, absent the violation of a legal duty separate and distinct from the

contractual obligation."  *Metropolitan Alloys Corp. v. Considar Metal Marketing,*

*Inc.,* No. 06-12667, 2007 WL 2874005, at *5 (E.D. Mich. Sept. 25, 2007).  In

Defendants' view, Plaintiffs' tort claims of fraudulent and innocent

misrepresentation are insufficiently distinct from their breach-of-contract claim to

withstand scrutiny under this principle.  In response, Plaintiffs do not necessarily

take issue with Defendants' characterization of their claims, but they nonetheless

---

[2]The parties assume without discussion that the issues raised in Defendants'
motion are governed by Michigan law, and the Court likewise proceeds under this
assumption in resolving Defendants' motion.

7

contend (i) that the Michigan Supreme Court has recently retreated from the rule that a party cannot pursue overlapping breach-of-contract and tort claims, and (ii) that, in any event, their claims fall within a "fraud in the inducement" exception to this rule. As discussed below, the Court finds that Defendants have the better of the argument on this question.

In *Neibarger v. Universal Cooperatives, Inc.,* 439 Mich. 512, 486 N.W.2d 612 (1992), the Michigan Supreme Court expressly adopted the economic loss doctrine in the context of a sale of goods governed by the Uniform Commercial Code ("UCC"). The court explained the doctrine as follows:

> The economic loss doctrine, simply stated, provides that where a purchaser's expectations in a sale are frustrated because the product he bought is not working properly, his remedy is said to be in contract alone, for he has suffered only 'economic losses.' This doctrine hinges on a distinction drawn between transactions involving the sale of goods for commercial purposes where economic expectations are protected by commercial and contract law, and those involving the sale of defective products to individual consumers who are injured in a manner which has traditionally been remedied by resort to the law of torts.

*Neibarger,* 486 N.W.2d at 615 (internal quotation marks and footnotes with citations omitted). After discussing the reasoning behind the economic loss doctrine and surveying the decisions of other courts that had applied this doctrine, the *Neibarger* court held that "where a plaintiff seeks to recover for economic loss

caused by a defective product purchased for commercial purposes, the exclusive remedy is provided by the UCC." 486 N.W.2d at 618; *see also Huron Tool & Engineering Co. v. Precision Consulting Services, Inc.,* 209 Mich. App. 365, 532 N.W.2d 541, 543-45 (1995) (considering whether the ruling in *Neibarger* extends to intentional tort claims, and concluding that the economic loss doctrine applies to fraud claims apart from those that allege fraud in the inducement).

In this case, the parties seemingly agree that the transaction giving rise to Plaintiffs' breach-of-contract claim is not properly characterized as a sale of goods governed by the UCC. Nonetheless, the courts have applied a principle of Michigan law closely related to the economic loss doctrine in cases involving commercial transactions that fell outside the scope of the UCC. Most notably, in *Rinaldo's Construction Corp. v. Michigan Bell Telephone Co.,* 454 Mich. 65, 559 N.W.2d 647, 651 (1997), the plaintiff construction company asserted a claim of negligence against the defendant telephone carrier, Michigan Bell, alleging that calls from its customers were not going through as a result of Michigan Bell's negligent installation and maintenance of the plaintiff's telephone service. The plaintiff acknowledged that its claim rested on the premise that Michigan Bell had "negligently fail[ed] to properly and fully perform its contract," and the Michigan Supreme Court thus considered whether, and under what circumstances, "an action

9

in tort may arise out of a contractual promise." *Rinaldo's Construction,* 559 N.W.2d at 657.

Upon surveying its earlier decision in *Hart v. Ludwig,* 347 Mich. 559, 79 N.W.2d 895 (1956), the court reasoned that "the threshold inquiry" in determining whether the plaintiff could proceed with its claim of negligence was "whether the plaintiff alleges [the] violation of a legal duty separate and distinct from the [defendant's] contractual obligation." *Rinaldo's Construction,* 559 N.W.2d at 658. The court found that the plaintiff in that case had failed to identify such an alleged violation of a separate legal duty:

> In this case, as in *Hart,* the defendant agreed to provide the plaintiff with services under a contract. Like the defendant in *Hart,* Michigan Bell allegedly failed to fully perform according to the terms of its promise. While plaintiff's allegations arguably make out a claim for "negligent performance" of the contract, there is no allegation that this conduct by the defendant constitutes tortious activity in that it caused physical harm to persons or tangible property; and plaintiff does not allege violation of an independent legal duty distinct from the duties arising out of the contractual relationship. Like the plaintiff in [a prior case], regardless of the variety of names plaintiff gives the claim, plaintiff is basically complaining of inadequate service and equipment. Thus, under the principles outlined above, there is no cognizable cause of action in tort.

559 N.W.2d at 658 (internal quotation marks, alterations, and citation omitted);

*see also I-Fusion Technology, Inc. v. TRW Automotive U.S., L.L.C.,* No. 306466,

10

2012 WL 6604701, at *3 (Mich. Ct. App. Dec. 18, 2012) (finding that "[b]ecause [the plaintiff] has failed to identify a duty owed by [the defendant] separate and distinct from its contractual obligations, no cognizable action in tort exists"); *Mid America Solutions, LLC v. Merchant Solutions International, Inc.,* No. 15-563, 2016 WL 96178, at *4 (W.D. Mich. Jan. 8, 2016) (explaining that "[r]egardless of the label the Court applies," Michigan law precludes "tort claims [that] arise solely out of [a defendant's] contractual duties"); *Insight Teleservices, Inc. v. Zip Mail Services, Inc.,* No. 14-11395, 2014 WL 7012653, at *11 (E.D. Mich. Dec. 11, 2014) (finding that "many of the tort claims" asserted by the plaintiff were "indistinguishable from [its] breach of contract claims," and thus were subject to dismissal); *Convergent Group Corp. v. County of Kent,* 266 F. Supp.2d 647, 660 (W.D. Mich. 2003) (finding that it was "unnecessary for the Court to decide whether the economic loss doctrine also applies to service contracts," because the defendant's "fraud claim is based solely on [the plaintiff's] contractual duties and, therefore, is subject to dismissal" under the Michigan Supreme Court's decision in *Hart*).

This principle of Michigan law, if applicable here, plainly would bar Plaintiffs' claims of fraudulent and innocent misrepresentation, as Plaintiffs do not allege, nor do they argue in response to Defendants' present motion, that

Defendants owed them a duty separate and distinct from the obligations imposed upon Defendants under the parties' contract. Nonetheless, in an effort to avoid this result, Plaintiffs first contend that the Michigan Supreme Court's decision in *Cooper v. Auto Club Insurance Association,* 481 Mich. 399, 751 N.W.2d 443 (2008), worked a significant change in the Michigan law governing Plaintiffs' tort claims in this case. The plaintiffs in *Cooper* brought suit against their insurer, asserting both (i) a claim under Michigan's no-fault auto insurance statute for benefits due under a policy issued by the defendant insurer, and (ii) a claim of fraud. *See Cooper,* 751 N.W.2d at 445-46. Under a "one-year-back" provision in Michigan's no-fault act, a claimant cannot recover benefits for losses incurred more than one year before a suit is filed. *Cooper,* 751 N.W.2d at 447. The defendant insurer argued that this "one-year-back" rule applied equally to the plaintiffs' statutory no-fault and common-law tort-based theories of recovery, but the Michigan Supreme Court rejected this contention, reasoning that "[a] fraud claim is clearly distinct from a no-fault claim" in light of the additional elements that must be proven, the different rule governing the accrual of a fraud claim, and the wider range of damages that are available in a fraud action. 751 N.W.2d at 448-49.

In Plaintiffs' view, *Cooper* effectively "overrule[d]" the decision of the

12

Michigan Court of Appeals in *Huron Tool, supra.*  (Plaintiffs' 6/6/2015 Response

Br. at 8.)[3]  In particular, Plaintiffs read *Cooper* as broadly holding that a plaintiff

may pursue both breach-of-contract and fraud claims despite an "overlap" in these

claims, so long as the plaintiff pleads and proves the additional elements of the tort

---

[3]It is not clear why Plaintiffs focus special attention on *Huron Tool.*  That case, after all, addressed a transaction governed by the UCC, and the court considered whether the economic loss doctrine as adopted by the Michigan Supreme Court in *Neibarger* should apply to intentional torts.  *See Huron Tool,* 532 N.W.2d at 543-45.  The Michigan Supreme Court's decision in *Rinaldo's Construction* is more on point here, as it is not narrowly focused on the economic loss doctrine as it applies to transactions governed by the UCC, but instead stands for the more general principle, as invoked by Defendants in the present motion, that a tort claim may co-exist with a breach-of-contract claim only if the plaintiff alleges the "violation of an independent legal duty distinct from the duties arising out of the [parties'] contractual relationship."  *Rinaldo's Construction,* 559 N.W.2d at 658.

Consequently, unless Plaintiffs can demonstrate that *Cooper* undermines the Michigan Supreme Court's prior decision in *Rinaldo's Construction,* as well as the larger body of Michigan case law of which it is a part, their attack on *Huron Tool* would appear to be wholly unavailing.  Indeed, it is especially puzzling to the Court why Plaintiffs would devote more than two pages of their brief in response to Defendants' motion to a federal district court's discussion of the question whether the **Wisconsin** courts would adopt a "fraud in the inducement" exception to the economic loss doctrine.  (*See* Plaintiffs' 6/6/2015 Response Br. at 9-11 (discussing the decision in *Budgetel Inns, Inc. v. Micros Systems, Inc.,* 8 F. Supp.2d 1137, 1144-49 (E.D. Wis. 1998)).)  While the court in *Budgetel Inns* certainly is critical of certain aspects of the ruling in *Huron Tools, see Budgetel Inns,* 8 F. Supp.2d at 1146-49, this Court fails to see how *Budgetel Inns*' inquiry into how the Wisconsin courts might resolve an open question of Wisconsin law could possibly be of any assistance in this Court's effort to ascertain the contours of the Michigan law that governs Plaintiffs' claims in this suit.  Simply stated, even if the Court were to accept *Budgetel Inns*' critique of *Huron Tool,* it nonetheless would be obliged to follow this ruling by the Michigan Court of Appeals, at least to the extent that it continues to accurately reflect the state of the Michigan law that governs the issues raised in Defendants' motion.

claim.  (*See id.* at 7-12.)  Yet, this proposed reading of the Michigan Supreme Court's ruling is belied by the language and reasoning of *Cooper* itself.  First, the court did not purport to address the possible interaction and co-existence of fraud and breach-of-contract claims.  Rather, the court considered whether the tort claim asserted by the plaintiffs in that case should properly be viewed as "brought under" Michigan's no-fault act, and therefore subject to the act's "one-year-back" rule.  *See Cooper,* 751 N.W.2d at 447 (observing that "a fraud action is a distinct and independent action brought under the common law," and not an "action for recovery of . . . benefits payable under the no-fault act" (internal quotation marks and alteration omitted)).

More importantly, *Cooper* expressly adheres to and reaffirms the principle invoked by Defendants here.  Specifically, the court emphasized that "although mere allegations of failure to discharge obligations under an insurance contract would not be actionable in tort, where, as here, the breach of ***separate and independent duties*** are alleged, the insured should be allowed an opportunity to prove their cause of action."  751 N.W.2d at 449 (emphasis added) (internal quotation marks, alterations, and citations omitted).  In *Cooper,* then, the plaintiffs were able to allege the "violation of a legal duty separate and distinct from the [defendant's] contractual obligation," *Rinaldo's Construction,* 559 N.W.2d at 658,

14

as required under prior Michigan case law to concurrently pursue breach-of-contract and tort claims, because the defendant insurer owed a "separate and independent duty not to deceive the [plaintiff] insureds, which duty is imposed by law as a function of the relationship of the parties," *Cooper,* 751 N.W.2d at 448 (footnote omitted).

Not surprisingly, then, the courts have continued to apply the principle of Michigan law recognized in *Rinaldo's Construction* and *Huron Tool,* notwithstanding the Michigan Supreme Court's intervening decision in *Cooper.* In *Bev Smith, Inc. v. Atwell,* 301 Mich. App. 670, 836 N.W.2d 872, 882-83 (2013), for example, the Michigan Court of Appeals cited *Huron Tool* in holding that the plaintiff was "limited to its contractual remedies under the UCC," where the claims of fraudulent misrepresentation and silent fraud that the plaintiff also sought to pursue "essentially reiterated the allegations set forth in plaintiff's breach-of-contract claim." Similarly, a number of courts in this District have looked to *Huron Tool* — as well as other above-cited Michigan court decisions such as *Hart* and *Rinaldo's Construction* — in determining that tort claims were subject to dismissal for lack of allegations that the defendant had violated a legal duty arising separately from the parties' contractual relationship. *See, e.g., Mid America Solutions,* 2016 WL 96178, at *2-4; *Visteon Corp. v. VarrocCorp*

15

*Holding B.V.,* No. 14-12418, 2015 WL 1530333, at *2-3 (E.D. Mich. March 31, 2015); *Insight Teleservices,* 2014 WL 7012653, at *9-11.[4]  Accordingly, the Court agrees with Defendants that the decision in *Huron Tool* is "alive and well," (Defendants' 6/30/2015 Reply Br. at 5), and that it continues to accurately state the rule of Michigan law that a fraud claim is subject to dismissal if the plaintiff "fails to allege any wrongdoing by [the] defendant[] independent of [the] defendant['s] breach of contract."  *Huron Tool,* 532 N.W.2d at 546.

In an abrupt about-face from its attack on the continued viability of *Huron Tool,* Plaintiffs next points to the recognition of the Michigan courts, in *Huron Tool* and more recent cases, that "the economic loss doctrine does not bar claims of fraud in the inducement."  *Bev Smith,* 836 N.W.2d at 883; *see also Huron Tool,* 532 N.W.2d at 544-45.  This Court readily acknowledges the distinction drawn under Michigan law between an ordinary fraud claim and a claim of fraud in the inducement — and, indeed, has expressly addressed this aspect of *Huron Tool* in a prior decision.  *See Metropolitan Alloys,* 2007 WL 2874005, at *6.

The salient question, however, is whether the allegations of Plaintiffs'

---

[4]Notably, the plaintiff in one of these cases pointed to the decision in *Cooper* as "support for its position that its fraud claim implicates separate duties from [its] breach of contract claim," but the court found *Cooper* distinguishable on some of the same grounds cited above by this Court.  *See Mid America Solutions,* 2016 WL 96178, at *4.

complaint support a plausible claim of fraud in the inducement.  Plaintiffs make no effort in their response to Defendants' motion to explain how their allegations might meet this standard, and the Court concludes upon independent examination that they do not.  As Defendants aptly observe, the alleged misrepresentations identified in Plaintiffs' complaint — *i.e.,* that the equipment leased from Defendants "would print and stuff mailings for all states," that it would "sort and stamp all mail," that the accompanying software "would fully integrate with [the Plaintiff law firm's] software," and that the law firm's "employees would be provided training specific to the machine," (First Amended Complaint at ¶ 28) — precisely track Plaintiffs' allegations as to the performance promised by Defendants under the parties' contract, (*see id.* at ¶¶ 15-16, 23 (alleging that Defendants agreed under the contract to provide equipment, software, and services "that would fully automate [the Plaintiff law firm's] mailing functions," and to "provid[e] training to [law firm] employees who would be . . . utilizing the leased equipment")).[5]  Under these circumstances, where the allegations in support of a

---

[5]The Court notes that Plaintiffs' initial and first amended complaints are unaccompanied by any written agreements executed by the parties, so these pleadings fail to disclose anything beyond their bare allegations as to the nature of Defendants' obligations under the parties' contracts.  While Defendants submitted a lease agreement and guaranty as exhibits to their counterclaim, Plaintiffs have made no effort to identify any purported distinctions between the promises made by Defendants in these (or any other) agreements and the alleged representations giving rise to Plaintiffs' tort claims.

plaintiff's breach-of-contract and fraud in the inducement claims are

"indistinguishable," the courts have held that such allegations fail to state a viable

claim of fraud in the inducement under Michigan law. *Visteon Corp.,* 2015 WL

1530333, at *3; *see also Huron Tool,* 532 N.W.2d at 546 (finding that the

plaintiff's claim of fraud in the inducement was subject to dismissal where the

fraudulent representations alleged by the plaintiff were "indistinguishable from the

terms of the contract and warranty that plaintiff alleges were breached"); *Uhl v.

Komatsu Forklift Co.,* 512 F.3d 294, 305 (6th Cir. 2008) (explaining that a

plaintiff cannot establish fraud in the inducement "where [the opposing] party

simply failed to uphold its side of the bargain" in a contractual relationship);

*TIBCO Software, Inc. v. Gordon Food Service, Inc.,* No. 03-25, 2003 WL

21683850, at *5 (W.D. Mich. July 3, 2003) (finding that a fraud in the inducement

counterclaim asserted by the defendant was "interwoven with" its breach-of-

---

To be sure, one of the representations allegedly made by Defendants — *i.e.,* that
the goods and services provided by Defendants "would save [the Plaintiff law firm]
money and . . . would 'pay for itself' as a result of the savings on postage alone," (*id.* at ¶
28(d)) — presumably was not reflected in a contract executed by the parties. The
Michigan courts have held, however, that statements of this sort that do not "concern[] an
existing or past fact" cannot support a claim of fraud. *Cummins v. Robinson Township,*
283 Mich. App. 677, 770 N.W.2d 421, 436 (2009). Although there is a recognized
exception to this rule if such a statement is made in bad faith as "a device to perpetrate a
fraud," *Foreman v. Foreman,* 266 Mich. App. 132, 701 N.W.2d 167, 177 (2005) (internal
quotation marks and citations omitted), the allegations of Plaintiffs' complaint do not
support the application of this exception here.

18

contract claim "rather than extraneous to the contractual dispute" between the parties, and thus was "barred by the economic loss doctrine").

To be sure, Plaintiffs expressly allege in their complaint that Defendants made false representations concerning the capabilities of their equipment and services in order "to induce [the Plaintiff law firm] to enter into a contract for the lease of the equipment at issue and to further induce Plaintiff Miller to guarantee the lease." (First Amended Complaint at ¶ 29.) Such a "formulaic recitation of the elements" of a claim of fraudulent inducement, however, cannot withstand a challenge under Rule 12(b)(6), *see Twombly*, 550 U.S. at 555, 127 S. Ct. at 1965, absent factual allegations indicating that Defendants promised something beyond simply delivering on their contractual obligations. As the Sixth Circuit has observed, to hold otherwise would "turn[] *every* breach-of-contract claim into a claim for fraud in the inducement, because every party enters into an agreement with the expectation that all parties will abide by the agreement's terms." *Uhl*, 512 F.3d at 305. Accordingly, the Court finds that Plaintiffs have failed to state a viable claim of fraud in the inducement under Michigan law.

Finally, Plaintiffs argue that Defendants' appeal to the economic loss doctrine is unavailing as to the claim of fraud asserted by the individual Plaintiff, Randall S. Miller. In support of this contention, Plaintiffs point solely to an

19

unpublished decision from a court in this District, finding that the economic loss

doctrine was not applicable in that case "because [the plaintiff's] claim is not

based upon a breach of a commercial contract for goods, [but] rather . . . is based

upon the alleged breach of a legally enforceable promise to repay a loan."

*Dell'Orco v. Brandt,* No. 03-71929, 2005 WL 1355088, at *5 (E.D. Mich. May 3,

2005).  In Plaintiffs' view, this same reasoning should apply to the tort claims

asserted by Mr. Miller, which rest upon his role as guarantor rather than a

transaction for goods or services.

The Court agrees — albeit not for the reason given by Plaintiffs — that the

principle of Michigan law set forth in such cases as *Rinaldo's Construction* and

*Huron Tool* does not operate to bar the misrepresentation claims asserted by Mr.

Miller.  As discussed earlier, these cases hold that a plaintiff cannot pursue

overlapping breach-of-contract and fraud claims absent allegations of the

"violation of a legal duty separate and distinct from the [defendant's] contractual

obligation."  *Rinaldo's Construction,* 559 N.W.2d at 658.  Here, however, Mr.

Miller presumably is not a party to the contract between Defendants and the

Plaintiff law firm that gives rise to the breach-of-contract claim asserted in count I

of Plaintiffs' complaint.  (*See* First Amended Complaint at ¶¶ 9, 12, 23-24

(referring to contractual undertakings promised by Defendants to the Plaintiff law

20

firm and money paid by the firm to Defendants under the parties' contract).)  It
follows that Mr. Miller's claim of misrepresentation cannot possibly rest on
Defendants' alleged  breaches of their contractual obligations, which were owed
solely to the Plaintiff firm.  Instead, if Mr. Miller is able to state a viable tort claim
against Defendants, any such claim must necessarily derive from a separate legal
duty allegedly owed by Defendants to him personally.

Nonetheless, the Court readily concludes that any such claim of fraud
asserted by Mr. Miller in Plaintiffs' complaint is subject to dismissal for failure to
plead this claim with the specificity required under Fed. R. Civ. P. 9(b).[6]  As this
Court has explained, Rule 9(b) dictates that a plaintiff must "describe specific
statements, identify the speaker, specify when and where the statements were
made, and explain why the statements were fraudulent," such that the defendant is
placed on "sufficient notice of the [alleged] misrepresentation[s]" to allow the
plaintiff's claim of fraud to be "address[ed] in an informed way."  *Thill v. Ocwen
Loan Servicing, LLC,* 8 F. Supp.3d 950, 956 (E.D. Mich. 2014) (internal quotation
marks and citations omitted).  In this case, Plaintiffs have only broadly identified
various representations made by "Defendants" regarding their promised

---

[6]As noted earlier, Defendants raised this Rule 9(b) challenge in their summary
judgment motion, but Plaintiffs wholly failed to address this issue in their response to
Defendants' motion.

performance under their contract with the Plaintiff law firm, (First Amended Complaint at ¶ 28), without specifying who made these statements or when they were made.

More importantly, nothing in the complaint suggests that any such alleged misrepresentations were made to Mr. Miller in particular.  Rather, after broadly describing the nature of the misrepresentations made by Defendants, Plaintiffs offer only conclusory allegations that simply parrot the elements of a claim of misrepresentation, asserting (i) that Defendants' representations regarding the capabilities of their equipment and services "were false when made," (ii) that Defendants either knew these representations were false or made them "recklessly, without knowing whether or not they were true," (iii) that Defendants "intended that Plaintiffs rely on the representations," and (iv) that Mr. Miller "relied upon the representations when he agreed to personally guarantee the lease" entered into by the Plaintiff law firm.  (First Amended Complaint at ¶¶ 29-31, 33.)  As explained earlier, such a "formulaic recitation of the elements" of a claim of misrepresentation does not suffice to avoid dismissal under Rule 12(b)(6), *see Twombly*, 550 U.S. at 555, 127 S. Ct. at 1965, nor does it satisfy the requirement under Rule 9(b) that claims of fraud be pled with particularity.  Accordingly, the fraudulent and innocent misrepresentation claims asserted by Mr. Miller

22

individually are subject to dismissal on these grounds.

## IV.  <u>CONCLUSION</u>

For the reasons set forth above,

NOW, THEREFORE, IT IS HEREBY ORDERED that Defendants'

February 6, 2015 motion to dismiss counts II and III of Plaintiffs' first amended

complaint (docket #21) is GRANTED.


s/Gerald E. Rosen_____
United States District Judge

Dated:  March 30, 2016

I hereby certify that a copy of the foregoing document was served upon the parties
and/or counsel of record on March 30, 2016, by electronic and/or ordinary mail.

s/Julie Owens_____
Case Manager, (313) 234-5135

23